**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FIRBIMATIC S.P.A.,<br><br>   and<br><br>ECO DRY OF AMERICA INC., D/B/A FIRBIMATIC<br><br>               Plaintiffs,<br><br>        v.<br><br>CORBETT EQUIPMENT,<br><br>FIRBIMATIC DRY CLEANING PRODUCTS LLC,<br><br>   and<br><br>JIM CORBETT<br><br>            Defendants. | Case No. _____<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, Firbimatic SPA and its affiliate Eco Dry of America Inc., d/b/a Firbimatic (collectively, "Firbimatic"), by their attorneys, for their complaint against Defendants Corbett Equipment, Firbimatic Dry Cleaning Products LLC, and Jim Corbett, allege as follows:

## NATURE OF ACTION

1.     This Complaint seeks injunctive relief and damages for the Defendants' infringement of Firbimatic's U.S. Trademark Registration No. 1430870 for the FIRBIMATIC mark (the "FIRBIMATIC Registration" – **Exhibit 1)** pursuant to 15 U.S.C. §1114 (Count I), federal unfair competition and false advertising pursuant to 15 U.S.C. §1125(a) (Count II), violation of the federal Anti-Cybersquatting Consumer Protection Act pursuant to 15 USC

1125(d) (Count III); violation of the Illinois Uniform Deceptive Trade Practice Act pursuant to 815 ILCS 510/1 (Count IV), common law trademark infringement and unfair competition (Count V); breach of contract (Count VI); harassing communications pursuant to 720 ILCS 5/26.5 (Count VII); and intentional infliction of emotional distress (Count VIII).

## PARTIES

2.      Plaintiff Firbimatic SPA is an Italian corporation with a principal place of business at Via Turati 16 Sala Bolognese Bologna, Italy 40010.

3.      Plaintiff EcoDry of America Inc. d/b/a Firbimatic USA is a Georgia corporation with a principal place of business at 13802 Washington Street, Woodstock, Illinois 60098. Plaintiff EcoDry of America Inc. is the exclusive dealer, importer, and representative of Firbimatic SPA in the United States. Firbimatic SPA and EcoDry of America Inc. are hereinafter collectively referred to as "Firbimatic."

4.      Defendant Corbett Equipment is a sole proprietorship, with a principal place of business at 19041 Milford Circle, Huntington Beach, California.

5.      Defendant Firbimatic Dry Cleaning Products LLC is a California Limited Liability company, with a registered address of 9151 Atlanta Ave #5902, Huntington Beach, California 92615, which is a post office box.

6.      Upon information and belief, Jim Corbett is an individual who resides in Huntington Beach, California, and is the sole member of, and directs, controls and benefits from the affairs of both Corbett Equipment and Firbimatic Dry Cleaning Products LLC.

7.      Upon information and belief, Defendants regularly conduct business in this District.

## JURISDICTION AND VENUE

8.      Counts I, II, and III of this action arise under the Lanham Act, 15 U.S.C. §1051, et seq.  This Court has subject matter jurisdiction over the federal statutory claim of this action pursuant to 28 U.S.C. §§1331 and 1338, and the state law claims pursuant to supplemental jurisdiction under 28 U.S.C. §1367.

9.      This Court has personal jurisdiction over Defendants based at least upon the fact that the infringement alleged herein has occurred, and continues to occur, within this District, by Defendants' advertisement, importation, and sale of products that infringe the FIRBIMATIC mark, because Defendants sell competing products under the FIRBIMATIC to customers within this District, and because Defendants' harassing behavior is directed to an employee of Firbimatic who resides in this District.

10.     Venue is proper pursuant to 28 U.S.C. §1391(b) and (c).

## FACTUAL BACKGROUND

### Firbimatic's Trademark Rights

11.     Plaintiff Firbimatic is the world leader in commercial and industrial dry cleaning machine manufacturing, design, and development.

12.     Firbimatic has offered, marketed and sold commercial and industrial dry cleaning machines, parts and accessories under and in connection with the FIRBIMATIC mark in commerce since at least as early as 1979.

13.     Since its inception, Firbimatic has devoted substantial time, effort and resources marketing and selling its commercial and industrial dry cleaning machines, parts and accessories and related installation and repair services under and in connection with the FIRBIMATIC mark, which has become an extremely valuable asset to the company, and is the cornerstone of

Firbimatic's brand. Firbimatic also has longstanding common law rights in its FIRBIMATIC mark in connection with dry cleaning machines, parts, accessories and supplies therefore.

14.     Since 1999, Firbimatic owns and operates the domain name <firbimaticusa.com> which it uses to promote its products and services offered under its FIRBIMATIC to customers. Attached as **Exhibit 2** are true and correct copies of screen shots from the <firbimaticusa.com> website.

15.     Firbimatic has developed proprietary marketing materials to market its products under the Firbimatic brand, and these materials include its proprietary photographs of its Firbimatic products, including those that appear on the <firbimaticusa.com> website.

16.     To further protect its rights in its FIRBIMATIC trademark, Firbimatic has obtained trademark registrations, including U.S. Trademark Registration No. 1,430,870 (**Exhibit 1**), which registered on March 3, 1987, and is incontestable pursuant to 15 U.S.C. §1065.

17.     As evidenced by the FIRBIMATIC registration, Firbimatic has the exclusive right to use in commerce in the United States the FIRBIMATIC mark for the goods identified – namely, dry cleaning machines. The scope of protection for this mark also covers Firbimatic's closely related and complementary goods and services, including those within its natural zone of expansion, such as dry cleaning machine parts, accessories and supplies.

Firbimatic's Distribution Agreement with Corbett Equipment

18.     Among other ways of promoting its brand, Firbimatic sells its products and services through a network of authorized distributors.

19.     In January of 2003, Firbimatic entered into a Distributor Distribution Agreement with Defendant Corbett Equipment which enabled Corbett Equipment to be an authorized

distributor for Firbimatic in the Greater Los Angeles Area (the "Agreement"). A true and correct copy of the Agreement is attached as **Exhibit 3**.

20.     Pursuant to the Agreement, Defendant Corbett Equipment was required to meet a specified annual sales quota, maintain service and support for Firbimatic products, maintain good credit, and purchase any and all Firbimatic products pursuant to the terms of the Firbimatic Contract of Sale, among other material terms. The Contract of Sale provides that title of any products purchased by Corbett Equipment under the Agreement shall remain in Firbimatic's name until the products are paid off in full in cash by Defendant. The Agreement also prohibited Corbett Equipment to act or represent itself as a representative of Firbimatic.

21.     The Agreement authorized Corbett Equipment to use the Firbimatic trade name and the product trade names in connection with its promotion and sale of Firbimatic products while the Agreement was in effect. The Agreement provided that Corbett Equipment's right to use the Firbimatic trade name and the products trade names would cease immediately upon termination of the Agreement, which required (30) days written notice.

22.     As described more fully in the section below, as a result of Corbett Equipment's failure to meet its annual sales quota, failure to pay fully for a machine that it purchased from Firbimatic and failure and maintain credit in good standing, in August 2016, Firbimatic provided Corbett Equipment with written notice of its termination of the Agreement.  A true and correct copy of the termination letter is attached as **Exhibit 4**.

23.     Following the termination of the Agreement in September 2016, any subsequent use by Corbett Equipment of the Firbimatic trade name and the product trade names in connection with its business activities was unauthorized. Similarly, any representation by

Defendant after September 2016 that it was an authorized distributor of Firbimatic products is improper and misleading.

Corbett Equipment's Breach of the Agreement

24.     Starting in 2003, pursuant to the Agreement, Defendant Corbett Equipment operated as an authorized sales distributor of Firbimatic.

25.     The Agreement provides among other material terms, that Corbett Equipment would provide payment to Firbimatic within 30 days of product delivery, with interest charges of 1.5% to apply to any unpaid balance for each month a balance remains after 30 days following delivery, and that if the balance is not paid within 30 days the 10% discount off the purchase price would be rescinded and the full purchase price would be reinstated and become due.

26.     On or about November 9, 2015, Firbimatic entered into a sales contract with Defendant Corbett Equipment wherein Firbimatic agreed to provide to Corbett Equipment a F60 Omnia Dry Clean Machine (the "Omnia Dry Clean Machine") at the distributor 10% discounted rate of $44,982 plus outbound shipping of $1,100, leaving a balance due to Firbimatic of $46,082. A true and correct copy of the Omnia Dry Clean Machine sales contract is attached as **Exhibit 5**. Firbimatic timely processed and shipped the Omnia Dry Clean Machine from its Illinois office to Corbett Equipment in California shortly after entering into the sales contract.

27.     On December 2, 2015, following receipt of the Omnia Dry Clean Machine, Corbett Equipment paid the sum of $19,000 to Firbimatic towards the $46,082 purchase price due, leaving a balance then due to Firbimatic of $27,082. The remaining balance of the purchase price was required to be paid by Corbett Equipment to Firbimatic no later than January 2, 2016 (i.e., 30 days of receipt of the product).  Corbett Equipment failed to pay the remainder of the balance by January 2, 2016.

28.     In order to secure the purchase of the November 9, 2015 Omnia Dry Clean Machine sales contract, Firbimatic filed a UCC Financial Statement with the Illinois Secretary of States Uniform Commercial Code Division on January 6, 2016, a copy of which is attached hereto as **Exhibit 6**.

29.     Despite Firbimatic's repeated requests that Corbett Equipment pay the remaining balance due on the Omnia Dry Clean Machine under the contracted terms, Corbett Equipment failed, and continues to fail to, to make *any* further payments to Firbimatic. Corbett Equipment has at all times since December 2, 2015 maintained possession of the Omnia Dry Clean Machine.

30.     As Corbett Equipment failed to pay in full for the Omnia Dry Clean Machine within 30 days of receipt, it is required to pay the full purchase price, plus 1.5% interest per month on the balance due. As of the date of filing this Complaint, the $27,082 balance remains due and under the Agreement, the 10% discount of $4,998 from the Omnia Dry Clean Machine sales contract must be added to the balance due, plus interest of 1.5% per month for about 60 months on the full purchase price (*i.e.*, $46,298 in interest), resulting in a total balance due to Firbimatic of $78,378.

31.     By reason of Defendant Corbett Equipment's breach of the Agreement and the Omnia Dry Clean Machine sales contract, Firbimatic has been damaged in the amount of $78,378.

Defendants' Subsequent Unlawful Activities

32.     In 2017, after the termination of the Agreement, Firbimatic received a complaint from the attorney of a dissatisfied customer (a copy of which is attached as **Exhibit 7**) relating to work done by Defendant Jim Corbett in his purported capacity as a "Firbimatic distributor" who represented that Corbett Equipment was a "certified repair center for Firbimatic."  The customer complaint explained that Corbett was hired by an insurance company to evaluate water damage in a Firbimatic dry cleaning machine owned by the customer, and that Corbett removed several parts from the machine, purportedly to assess damage, left with those parts (apparently valued at $7,000), never returned, and refused to cooperate, all the while placing Firbimatic's reputation on the line by virtue of Corbett's purported association with Firbimatic. Firbimatic has received several other similar complaints from its authorized distributors and competitors, including but not limited to MW Equipment of Glendale, California, Haiges Machinery, Inc. of Huntly, Illinois, and Union Dry Cleaning Products, USA of Atlanta, Georgia, who dealt with Defendants and were harmed as a result of Defendants' fraud, poor service and/or harassing communications, thinking that Defendants were authorized Firbimatic dealers/technicians or otherwise affiliated with Firbimatic when that was not the case.

33.     On January 19, 2018, Defendant Jim Corbett incorporated Firbimatic Dry Cleaning Products LLC in California. On information and belief, Firbimatic Dry Cleaning Products LLC operates as a discount dry cleaning machines, parts and supplies company. On information and belief, Firbimatic Dry Cleaning Products LLC is the same company as Corbett Equipment. Tellingly, the email address associated with Firbimatic Dry Cleaning Products LLC is service@corbettequipment.com, and the domain name <corbettequipment.com> currently redirects to <firbimaticus.com>, which as described below is used to host Defendants' infringing website used to sell competing dry cleaning-related parts and supplies.

34.     On August 15, 2018, on behalf of Firbimatic Drycleaning Products LLC, Jim Corbett registered the domain name <firbimaticus.com>. The <firbimaticus.com> domain name resolves to an active website that prominently bears the FIRBIMATIC mark and purports to offer for sale a variety of dry cleaning machines and discounted parts and related accessories. Attached collectively as **Exhibit 8** is a copy of the WHOIS record for the <firbimaticus.com> domain name and screen shots of the website at that address.

35.     But for the additional letter "a" in the "USA" suffix in Firbimatic's <firbimaticusa.com> domain name, Defendants' <firbimaticus.com> domain name is identical to Firbimatic's domain name.

36.     The <firbimaticus.com> website bears a striking resemblance to Firbimatic's official website at <firbimaticusa.com>, including through the prominent use of the FIRBIMATIC trademark, a similar red circle logo, similar fonts and images used throughout, and through the product offerings for identical and closely related goods. Side by side screen shots of Defendants' and Firbimatic's websites underscores the similarities of the look and feel of the parties sites:



9

37. Sometime in late 2018, Defendants began redirecting the domain name <corbettequipment.com> to <firbimaticus.com>, where Defendants sell dry cleaning-related products with prominent use of the FIRBIMATIC trademark.

38. In November 2018, when Firbimatic became aware of Defendants' registration and use of the domain names <firbimaticus.com> and <corbettequipment.com>, Firbimatic sent a letter through its outside counsel to Web.com, the company that hosted website at those domains, requesting that the website be deactivated. The website was deactivated, albeit temporarily.

39. Defendants' competing dry cleaning machines, parts, and accessories are also available on Defendants' online storefronts on eBay and Amazon.com, which prominently use the FIRBIMATIC mark, such as in the seller name, "firbimaticdrycleaning." Defendants sell and ship competing goods from these online marketplaces under the FIRBIMATIC mark to customers in Illinois, including in this District.   Attached as **Exhibit 9** are sample screen shots of Defendants' infringing online marketplace listings.

40. Despite the termination of its distributor Agreement with Firbimatic in 2016, Corbett Equipment (aka Firbimatic Drycleaning Products LLC) as well as Jim Corbett, continue to promote themselves as authorized dealers of Firbimatic dry cleaning machines on social media, including on Firbimatic Drycleaning Products LLC's Facebook page which operates under the user name "Firbimatic," as show in **Exhibit 10**, and in the screen shots depicted below:



41.     Firbimatic has submitted 50+ takedown notices on Amazon, Facebook, and Defendants' other social media pages to seek the removal of Defendants' infringing listings and promotional efforts. Despite Firbimatic's successful takedown efforts, Defendants' continue to add new listings and postings for infringing goods.

42.     On October 20, 2020, in a further attempt to give legitimacy to Defendants' false claim of rights in the Firbimatic brand, Defendant Jim Corbett filed a U.S. federal trademark application to register the mark FIRBIMATIC DRYCLEANING PRODUCTS for "dry cleaning fluids; Dry cleaning preparation," U.S. Trademark Application No. 90265822, and alleges that he first used the mark in commerce at least as early as September 27, 1995. Defendant Corbett submitted a screen shot of the <firbimaticus.com> website as the specimen of use in support of his trademark application, attached hereto as **Exhibit 11**.

43.     On or around December, 2019, Defendants placed an advertisement for Firbimatic Drycleaning Products LLC in a national trade publication, Cleaner & Launderer, in which Defendants improperly promote themselves as Firbimatic distributors. The publisher, Wakefield Publishing, who has a longstanding relationship with Firbimatic, contacted Firbimatic to notify it of the infringing activity. Firbimatic confirmed that the listing was unauthorized and should be immediately removed. Following the removal of Defendants' advertisement in Cleaner & Launderer, Defendants contacted the publisher in a threatening manner.

44.     Shortly thereafter, Defendants contacted American Drycleaner, which is based in Chicago, Illinois, to change the directory listing with that publication from Corbett Equipment to Firbimatic Dry Cleaning Products LLC. Defendants' updated listing was published in the August 2020 edition of American Drycleaner, and replaced Firbimatic's official listing in the directory. Defendants' listing is attached hereto as **Exhibit 12**. The infringing listing includes references to

the FIRBIMATIC mark, the <firbimaticus.com> domain name and firbimaticparts@yahoo.com email and even lists Firbimatic's Executive Vice President in the United States, Darrin Haiges as a contact person to lend credibility. Firbimatic similarly objected to the directory listing and requested that it be removed from American Drycleaner, and that its official listing be reinstated, to which American Drycleaner agreed.

45.     In response to Firbimatic's objections over the past several years, Defendant Jim Corbett lodged a series of attacks against the trade publications, website hosts, and Firbimatic employees, arguing that Corbett is the rightful owner of the Firbimatic business name, which he purports to have used since 1995. In doing so, Corbett claims that Firbimatic has unlawfully taken the Firbimatic name and the <firbimatic.com> and <firbimaticusa.com> websites away from him, threatening legal action if Firbimatic's use of the FIRBIMATIC mark is not ceased. Defendants contacted the domain name registrar and website host company in an effort to have the <firbimatic.com> and  <firmibaticusa.com> domain names transferred from Firbimatic to Defendants, alleging that Firbimatic infringes Defendants' trademark rights, but the domain name transfers were unsuccessful due to Firbimatic's objection and superior rights in the FIRBIMATIC mark.

46.     Among other ways of attacking Firbimatic, Jim Corbett has targeted Firbimatic's Executive Vice President in the United States, Darrin Haiges, who works in Firbimatic's Illinois office and resides in McHenry county, sending Mr. Haiges threatening and harmful text messages and emails on a regular basis for nearly five years. The messages, which started shortly after Corbett Equipment stopped paying for the dry cleaning machine it purchased from Firbimatic, continued until Mr. Haiges blocked Corbett's number, and include a barrage of baseless accusations that Mr. Haiges and Firbimatic stole Defendants' business identity. The

messages include vulgar, threatening, disgusting, perverted and overall extremely disgusting content, and have caused Mr. Haiges severe emotional distress over the past several years. Mr. Corbett's constant messages to Mr. Haiges are extremely bothersome, disturbing and causing harm. Attached hereto as **Exhibit 13** are copies of representative text messages sent by Jim Corbett to Mr. Haiges. Mr. Corbett has also sent threatening text messages to Firbimatic's competitors claiming that he is a Firbimatic dealer and demanding payment that he claims is owned to him.

47.     Adding fuel to the fire, on November 2, 2020, Defendant Jim Corbett called the police in Woodstock, Illinois alleging that Darrin Haiges and Firbimatic stole his corporate identity.  Since Corbett's claim was baseless and clearly intended merely harass Mr. Haiges, the police declined to take any action beyond notifying Mr. Haiges.

48.     Having no other choice, Firbimatic was forced to bring this action to protect its rights in its FIRBIMATIC mark and put an end to Defendants' erratic and harmful behavior.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. §1114(1)(a)

49.     Firbimatic re-alleges and incorporates Paragraphs 1 - 48 of this Complaint.

50.     Pursuant to 15 U.S.C. §1072, Defendants have constructive notice and actual notice of Firbimatic's ownership of and rights in the registered FIRBIMATIC trademark prior to Defendants unauthorized use of the FIRBIMATIC mark in connection with dry cleaning machines, parts and supplies and related repair services.

51.     Defendants have deliberately and willfully used the identical FIRBIMATIC mark to trade upon the widespread goodwill, reputation and selling power established by Firbimatic

14

under its FIRBIMATIC mark and to pass their dry cleaning machines, parts and supplies and related repair services off as those of Firbimatic.

52.     Firbimatic has not consented to Defendants' ongoing use of the FIRBIMATIC mark in connection with dry cleaning machines, parts and supplies and related repair services.

53.     Defendants' unauthorized use of the FIRBIMATIC mark in connection with dry cleaning machines, parts and supplies and related repair services is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants or their products and services with Firbimatic and its FIRBIMATIC mark in violation of 15 U.S.C. §1114(1)(a).

54.     The intentional and willful nature of the aforementioned acts renders this violation subject to enhanced or statutory damages and an exceptional case under 15 U.S.C. §1117.

55.     As a result of Defendants' aforementioned conduct, Firbimatic has suffered and continues to suffer substantial damage and irreparable harm, constituting an injury for which Firbimatic has no adequate remedy at law.  Accordingly, only an injunction from this Court can prevent Firbimatic's further irreparable harm at the hands of Defendants.

## COUNT II

### FEDERAL UNFAIR COMPETITION AND FALSE ADVERTISING
### (15 U.S.C. §1125(a))

56.     Firbimatic re-alleges and incorporates herein paragraphs 1 through 55 of this Complaint.

57.     On information and belief, Defendants have deliberately and willfully used the FIRBIMATIC mark in an attempt to trade on the long-standing and hard-earned goodwill,

reputation and selling power established by Firbimatic in connection with its dry cleaning machines, parts and supplies and related repair services, and to confuse consumers as to the origin and sponsorship of Defendants' goods and services.

58.     Defendants have made false and misleading statements of fact in continuing to market themselves as authorized dealers and technicians of Firbimatic machines and parts after the distributor Agreement with Firbimatic was terminated.

59.     Defendants' misleading, unauthorized and tortious conduct has also deprived, and will continue to deprive, Firbimatic of the ability to control the consumer perception of its goods and services marketed under its FIRBIMATIC mark, placing the valuable reputation and goodwill of Firbimatic in the hands of Defendants, over whom Firbimatic has no control.

60.     Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants' products and services with Firbimatic, and as to the origin, sponsorship or approval of Defendants' products and services, in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1).

61.     The intentional nature of the aforementioned acts renders this an exceptional case under 15 U.S.C. §1117(a).

62.     As a result of Defendants' aforementioned conduct, Firbimatic has suffered and continues to suffer substantial damage and irreparable harm constituting an injury for which Firbimatic has no adequate remedy at law.  Accordingly, only an injunction from this Court can prevent Firbimatic's further irreparable harm at the hands of the Defendants.

## COUNT III

## VIOLATION OF FEDERAL ANTI-CYBERSQUATTING
## CONSUMER PROTECTION ACT
## (15 U.S.C. §1125(d))

63.     Firbimatic re-alleges and incorporates herein paragraphs 1 through 62 of this Complaint.

64.     Firbimatic is the owner of all title, and interest in and to the distinctive FIRBIMATIC mark, for which it has established both federally registered and common law rights. Firbimatic began providing its products and services under the FIRBIMATIC mark long prior to the activities of Defendants complained of herein.

65.     At the time Defendants registered the <firbimaticus.com> domain name, Firbimatic had acquired both federally registered and common law rights in the distinctive mark, FIRBIMATIC.

66.     Defendants' <firbimaticus.com> domain name is confusingly similar to Firbimatic's distinctive FIRBIMATIC mark in that it is comprised entirely of Firbimatic's federally-registered FIRBIMATIC trademark, and only differs from FIRBIMATIC by the addition of the geographic descriptor "us" and the gTLD .com.

67.     Based on Firbimatic's federal trademark registration, Defendants had at least constructive notice of Firbimatic's prior rights in the FIRBIMATIC mark when they registered the <firbimaticus.com> domain name.

68.      In registering and using the <firbimaticus.com> domain name to operate a website that sells goods that are identical to and compete with Firbimatic's under the identical FIRBIMATIC mark, Defendants have demonstrated a bad faith intent to profit from Firbimatic's FIRBIMATIC mark.

69.     Defendants' wrongful conduct violates the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

70.     As a result of the aforesaid conduct, Firbimatic has suffered irreparable harm constituting an injury for which Firbimatic has no adequate remedy at law. Unless this Court enjoins Defendants' conduct, Firbimatic will continue to suffer irreparable harm.

## COUNT IV

### VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 510/1 *et seq*)

71.     Firbimatic re-alleges and incorporates herein paragraphs 1 through 70 of this Complaint.

72.     Defendants' actions complained of herein constitute deceptive trade practices in violation of 815 ILCS 510/2 in that they are likely to cause confusion or misunderstanding as to source, sponsorship or approval of Defendants' goods and services. Defendants' deceptive conduct also creates a likelihood of confusion as to the affiliation, connection or association of Defendants and its goods and services with Firbimatic and its well-known FIRBIMATIC mark for its dry cleaning-related goods and services.

73.     Because Defendants had actual notice of Firbimatic's prior use of and rights in its FIRBIMATIC mark before Defendants began using the mark, Defendants are willfully engaged in deceptive acts or practices in violation of Illinois law.

74.     In addition to the irreparable harm caused to Plaintiff by reason of Defendants' acts, Firbimatic has suffered and will continue to suffer monetary damages in an amount not yet determined.

75.     As a result of Defendants' willful conduct, Firbimatic is likely to suffer harm, and has in fact already been injured.  Unless this Court enjoins Defendants' conduct, Firbimatic will continue to suffer irreparable harm.

## COUNT V

## COMMON LAW TRADEMARK
## INFRINGEMENT AND UNFAIR COMPETITION

76.     Firbimatic re-alleges and incorporates herein paragraphs 1 through 75 of this Complaint.

77.     Firbimatic is the current, active, and exclusive owner of the FIRBIMATIC mark, which is valid and legally protectable.

78.     Defendants have used the FIRBIMATIC mark without Firbimatic's consent or authorization in the course of selling competing dry cleaning goods and services in commerce.

79.     The unauthorized use of the FIRBIMATIC mark in connection with the Defendants' competing dry cleaning goods and services is likely to cause confusion between Defendants and their products and services on one hand, and Firbimatic and its products and services on the other hand. Such use by Defendants infringe the valuable common law rights in the FIRBIMATIC mark.

80.     Defendants' aforementioned acts also constitute unfair competition with Firbimatic by creating confusion as to source or sponsorship of the goods and services of Defendants, and, Defendants' activities misappropriate Firbimatic's reputation and goodwill. As a result of its aforementioned wrongful actions, Defendants will be unjustly enriched.

81.     As a result of Defendants' aforementioned conduct, Firbimatic has suffered and continues to suffer substantial damage and irreparable harm constituting an injury for which

Firbimatic has no adequate remedy at law.  Accordingly, only an injunction from this Court can prevent Firbimatic's further irreparable harm at the hands of Defendants.

## COUNT VI

**BREACH OF CONTRACT**
**(AS AGAINST DEFENDANT CORBETT EQUIPMENT)**

82.     Firbimatic re-alleges and incorporates herein paragraphs 1 through 81 of this Complaint.

83.     Firbimatic and Defendant Corbett Equipment entered into a valid Agreement governing Corbett Equipment's distribution and sales of Firbimatic's products in 2003.

84.     Pursuant to that Agreement, Corbett Equipment was required to meet a specified annual sales quota, maintain a line of good credit, and purchase in full any and all Firbimatic products pursuant to the terms of the Firbimatic Contract of Sale, among other material terms. The Agreement also prohibited Corbett Equipment from acting or representing itself as a representative of Firbimatic. The Agreement also prohibited Corbett Equipment from making any use of the Firbimatic trade name and the products trade names upon termination.

85.     Defendant Corbett Equipment failed to meet the required annual sales quota, failed to maintain a line of good credit, and failed to pay off in full the balance for the products that it purchased from Firbimatic under the Agreement, namely the Omnia Dry Clean Machine. Firbimatic accordingly terminated the agreement in 2016.

86.     The termination of the Agreement does not absolve Corbett Equipment from its obligation to pay off the balance for the products purchased from Firbimatic under the Agreement.

87.     Thus, Defendant Corbett Equipment breached the Agreement by failing to pay the remaining balance due on the Omnia Dry Clean Machine to Firbimatic, plus interest of 1.5% a month.

88.     Defendant Corbett Equipment further breached the Agreement when it failed to cease use of the Firbimatic trade name and the products trade names after the termination of the Agreement.

89.     On information and belief, Corbett Equipment's breach of the Agreement was willful.

90.     Corbett Equipment's breach has harmed Firbimatic through erosion of the value of Firbimatic's goodwill in its FIRBIMATIC mark, and the financial loss due from the outstanding balance due on the Omnia Dry Clean Machine. As a result of such breach, Firbimatic has suffered and will continue to suffer immediate and irreparable harm to its goodwill and reputation, for which it lacks an adequate remedy at law.

## COUNT VII

### HARASSING COMMUNICATIONS
### (720 ILCS 5/26.5 *et seq.*)
### (AS AGAINST DEFENDANT JIM CORBETT)

91.     Firbimatic re-alleges and incorporates herein paragraphs 1 through 90 of this Complaint.

92.     Defendant Jim Corbett engaged in harassment by telephone and harassment through electronic communications under 720 ILCS 5/26.5 through his years-long pattern of sending threatening text messages and phone calls to Firbimatic's Executive Vice President, Darrin Haiges, with the intent to harass.

93.     Jim Corbett's intent to harass Mr. Haiges is further demonstrated through his actions in contacting the police.

94.     As a result of Jim Corbett's harassing conduct, Firbimatic has suffered and will continue to suffer immediate and irreparable harm, for which it lacks an adequate remedy at law.

## COUNT VIII

### INTENTIONAL INFLICTION OF  EMOTIONAL DISTRESS
### (AS AGAINST DEFENDANT JIM CORBETT)

95.     Firbimatic re-alleges and incorporates herein paragraphs 1 through 94 of this Complaint.

96.     Defendant Jim Corbett's conduct alleged herein, and in particular, his years-long pattern of sending threatening text messages and phone calls to Firbimatic's Executive Vice President, Darrin Haiges and calling the police to make a baseless claim against Firbimatic and its employee is extreme and outrageous, and has caused Mr. Haiges severe emotional distress.

97.     Jim Corbett either intended that such conduct would inflict severe emotional distress, or knew that there is at least a high probability that his conduct will cause severe emotional distress based on Firbimatic's ongoing efforts to halt such conduct.

98.     Jim Corbett's conduct constitutes intentional infliction of emotional distress.

99.     As a result of Jim Corbett's conduct, Firbimatic has suffered and will continue to suffer immediate and irreparable harm, for which it lacks an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, as to all Counts of this Complaint, Firbimatic requests that this Court enter a judgment in its favor and against Defendants on each Count herein and grant relief as follows:

A.      Permanently enjoin and restrain Defendants, their parents, subsidiaries, holding companies, licensees, owners, directors, officers, partners, assigns, related entities, affiliates, predecessors, successors, employees, representatives, trustees, receivers, agents and any other persons or entities acting on behalf of Defendants or with Defendants' authority, from:

    i.    using, selling, offering for sale, holding for sale, advertising or promoting any dry cleaning machines, parts, supplies, accessories and related technician support services under the FIRBIMATIC mark;

    ii.   doing any act or thing that is likely to induce the belief that Defendants' goods, services or activities are in some way connected with or authorized by Firbimatic, or that is likely to injure or damage Firbimatic's business or the FIRBIMATIC mark;

    iii.  assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (b).

B.      Require that Defendants:

    i.    reimburse Plaintiff for all damages it has suffered by reason of such acts complained of herein;

    ii.   pay to Plaintiff exemplary, treble, damages as provided for in 15 U.S.C. §1117 and at common law;

    iii.  recall from the channels of trade all product packaging, advertising and promotional material sold or distributed by Defendants or their affiliates that bear the FIRBIMATIC mark;

    iv.   transfer the <firbimaticus.com> domain name to Firbimatic and agree to not register any other domain names that are comprised of or incorporate the FIRBIMATIC mark;

    v.    expressly abandon U.S. Trademark Application No. 90/265,822;

23

vi.    reimburse Plaintiff for the costs it has incurred in bringing this, together with its reasonable attorneys' fees and disbursements pursuant to 15 U.S.C. §1117; and

vii.    pay the remaining balance due to Firbimatic (plus interest) on the Omnia Dry Clean Machine in the amount of $78,378.

C.    Award Plaintiff such other and further relief as this Court deems equitable.

Date: December 14, 2020

By: _s/ Katherine Dennis Nye _____
Katherine Dennis Nye, Esq.
Andrea S. Fuelleman, Esq.
NEAL GERBER & EISENBERG LLP
2 North LaSalle Street, Suite 1700
Chicago, Illinois 60602
Tel: (312) 269-8000
knye@nge.com
afuelleman@nge.com
Attorneys for Plaintiffs